[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-11955

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WARREN LAVELL JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:99-cr-14021-DMM-1

_____

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and JUNG,[*] District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal on remand from the Supreme Court requires us to reconsider, following the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), whether the district court erred in denying Warren Jackson's motion for a reduced sentence under the First Step Act of 2018. Following supplemental briefing, we conclude that *Concepcion* did not abrogate the reasoning of our decision in *United States v. Jones*, 962 F.3d 1290 (11th Cir. 2020), which forecloses Jackson's claim for relief. We also disagree with the parties that Jackson is entitled to relief because his original sentence was pending on direct appeal when the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). So, we reinstate our prior decision and affirm the denial of relief.

## I. BACKGROUND

In 1999, a grand jury charged Jackson with one count of possessing with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. section 841(a)(1). *See Jones*, 962 F.3d at 1295. Jackson proceeded to trial, where a jury found him guilty.

---

[*] Honorable William F. Jung, United States District Judge for the Middle District of Florida, sitting by designation.

The jury did not make a finding as to the specific drug quantity involved in Jackson's crime; Jackson "was prosecuted before *Apprendi v. New Jersey* made clear that drug-quantity findings that increase a defendant's punishment must be made by a jury based on a standard of proof of beyond a reasonable doubt." *Id.* at 1293 (citing 530 U.S. at 490). The district court found that the offense involved 287 grams of crack cocaine. Based on this drug-quantity finding and after applying a sentencing enhancement for three prior felony drug convictions, the district court imposed a statutorily mandated sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(iii) (1994); *see also* United States Sentencing Guidelines § 5G1.1(b) (1998).

Following the district court's decision, Jackson has had multiple opportunities to challenge his sentence. We affirmed his conviction and sentence on direct appeal. The district court denied at least four habeas petitions, 28 U.S.C. § 2255(a), and a motion to vacate his sentence pursuant to Rule 60, FED. R. CIV. P. 60. And it denied his motions for a reduction of his sentence. 18 U.S.C. § 3582(c)(2). Afterward, the President commuted Jackson's sentence to 300 months' imprisonment.

In 2019, Jackson moved to reduce his sentence under the First Step Act, which permits "[a] court that imposed a sentence for a covered offense [to] . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (internal citation

omitted). The Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act, that was committed before August 3, 2010." *Id.* § 404(a) (internal citation omitted). Section 2(a) of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, 2372, increased the quantity of crack cocaine necessary to trigger the mandatory penalties under 21 U.S.C. sections 841(b)(1)(A)(iii) and (b)(1)(B)(iii). *Jones*, 962 F.3d at 1297. "A defendant now must traffic at least 280 grams of crack cocaine to trigger the highest penalties." *Id.*

Because the First Step Act retroactively applies the reduced penalties for crack-cocaine offenses under the Fair Sentencing Act, movants ordinarily argue that the drug-quantity finding that determined their statutory penalty at the time of sentencing would permit a lower penalty under the Fair Sentencing Act. Jackson did not make that argument because, at his sentencing hearing, the judge found that the offense involved 287 grams of crack cocaine. That amount—because it is above 280 grams—still triggers "the highest penalties" under the Fair Sentencing Act. *Id.*

Instead, Jackson argued he was eligible for a sentence reduction because a judge, not a jury, made the drug-quantity finding that increased his statutory range. Jackson maintained that under *Apprendi* and *Alleyne v. United States*, 570 U.S. 99, 116 (2013), "the statutory penalties [in 21 U.S.C. section 841(b)] may be based only on a . . . [drug quantity] found as an element by a jury beyond a reasonable doubt." Jackson argued that the judge-made drug-

quantity finding was thus invalid and that he should have been sentenced within a lower statutory range. He argued that the district court should reduce his sentence under the First Step Act.

The district court denied Jackson's motion. It ruled that the Fair Sentencing Act "would have had no impact on [Jackson's] sentence . . . [b]ecause the offense involved 2[87] grams of cocaine." So, after accounting for Jackson's enhancements, he would still be subject to the same statutory mandatory minimum of life imprisonment.

In *United States v. Jones*—a consolidated appeal involving four unrelated appellants—we affirmed the denial of Jackson's motion. We held that although Jackson was convicted of a "covered offense," he did not prove that the reduction he sought would be "as if . . . the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Jones*, 962 F.3d at 1303 (quoting First Step Act § 404(b)). We held that the "'as-if' requirement imposes two [relevant] limits." *Id.*; *see also United States v. Jackson*, 995 F.3d 1308, 1309 (11th Cir. 2021) (Pryor, C.J., respecting denial of rehearing en banc). "First, it does not permit reducing a movant's sentence if he received the lowest statutory penalty that also would be available to him under the Fair Sentencing Act." *Jones*, 962 F.3d at 1303. "Second, in determining what a movant's statutory penalty would be under the Fair Sentencing Act, the district court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing." *Id.*

We clarified that "previous finding[s] of drug quantity that *could have been used* to determine the movant's statutory penalty" include "a previous drug-quantity finding that was necessary to trigger the statutory penalty [even] if it was made by a judge." *Id.* at 1302. We acknowledged that, under *Apprendi*, a jury must make a drug-quantity finding if it increases the statutory penalty. *Id.* But we held that "just as a movant may not use *Apprendi* to collaterally attack his sentence, he cannot rely on *Apprendi* to redefine his offense for purposes of a First Step Act motion." *Id.* (internal citation omitted). So, we concluded that "in deciding motions for reduced sentences under the First Step Act," the district court may "rely[] on earlier judge-found facts that triggered statutory penalties that the Fair Sentencing Act later modified." *Id.* at 1303.

We held that the district court was bound by the judge's earlier drug-quantity finding of 287 grams of crack cocaine. *Id.* at 1304. Based on this amount, we held that the "[t]he district court correctly concluded that it could not reduce Jackson's sentence because his drug-quantity finding meant that he would face the same statutory penalty of life imprisonment under the Fair Sentencing Act." *Id.* (citing 21 U.S.C. § 841(b)(1)(A)(iii) (2012)). Because Jackson's sentence "would have necessarily remained the same," following the consideration of the drug-quantity finding, "[a]ny reduction the district court would grant would not be 'as if' the Fair Sentencing Act had been in effect." *Id.* at 1303.

Following our decision, Jackson petitioned for rehearing *en banc*. We denied his petition. *See Jackson*, 995 F.3d at 1308. Jackson

then petitioned for a writ of certiorari from the Supreme Court. During the pendency of his petition, the Supreme Court decided in *Concepcion v. United States*, 142 S. Ct. at 2396, which factors, besides the changes to the crack-cocaine sentencing ranges, a district court may consider in deciding whether to exercise its discretion to reduce a sentence for a covered offense under the First Step Act. The Supreme Court explained that the "as if" clause did not "limit the information a district court may use to inform its decision whether and how much to reduce a sentence." *Concepcion*, 142 S. Ct. at 2402. The Supreme Court held that a district court "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." *Id.* at 2396. In October 2022, the Supreme Court granted Jackson's petition, vacated our judgment, and remanded the case for further consideration in the light of *Concepcion*. *Jackson v. United States*, 143 S. Ct. 72 (2022).

## II. STANDARD OF REVIEW

"We review *de novo* questions of statutory interpretation and whether a district court had the authority to modify a term of imprisonment." *Jones*, 962 F.3d at 1296 (internal citation omitted). "We review for abuse of discretion the denial of an eligible movant's request for a reduced sentence under the First Step Act." *Id.*

## III. DISCUSSION

We divide our discussion into two parts. First, we explain that *Concepcion* did not abrogate our holding that "the district

court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing." *Jones*, 962 F.3d at 1303. Second, we explain that Jackson cannot use a motion for a reduced sentence to correct an error based on *Apprendi*.

### A. The District Court Correctly Relied on the Judge-Made Drug-Quantity Finding to Calculate Jackson's Sentencing Range.

Jackson argues that *Concepcion* "cannot be squared" with *Jones*'s holding that district courts are bound by judge-made drug-quantity findings in First Step Act proceedings. Jackson maintains that "the [Supreme] Court rejected *Jones*'[s] core premise that the 'as if' language in § 404(b) imposes a substantive limit on the information a court can consider under the [First Step] Act." Jackson interprets *Concepcion* to give district courts complete discretion—without "any limitations" imposed by the "as-if" provision—to consider arguments "in favor of, or against, sentence modification." Jackson maintains that the district court was "free to consider intervening changes in law, including . . . *Apprendi*, in deciding whether to reduce [Jackson's] sentence under the First Step Act." The district court's discretion, Jackson suggests, includes the authority to ignore the earlier judge-made drug-quantity finding in calculating his statutory sentencing range. We disagree.

We do not read *Concepcion* so broadly. In *Concepcion*, the Supreme Court addressed which factors a district court may consider when a prisoner who was convicted of a "covered offense" seeks a reduced sentence under the First Step Act. 142 S. Ct. at 2396.

The movant in *Concepcion* was convicted of a "covered offense" for which the penalty range had been lowered in the Fair Sentencing Act. *Id.* at 2396–97. But he wanted the district court to consider other criteria during his First Step Act sentencing modification hearing. For example, he wanted the court to acknowledge legal changes that postdated his original sentencing. These changes included the vacatur of one of his state convictions and the Supreme Court's decision that his other convictions would no longer count as "crimes of violence." *Id.* And he wanted the court to consider new factual developments. He maintained that he had been rehabilitated, citing his drug treatment, job training, and spiritual growth. *Id.* The district court had refused to consider these factors. It ruled that it could "consider[] only the changes in law that the Fair Sentencing Act enacted," not other evidence. *Id.*

The Supreme Court disagreed. It cited the traditional "discretion federal judges hold at . . . sentencing modification hearings." *Id.* at 2399. In the First Step Act, Congress "did not contravene this well-established sentencing practice." *Id.* at 2401. The Supreme Court concluded that district courts deciding First Step Act motions may "consider intervening changes of law or fact in exercising their discretion to reduce a sentence." *Id.* at 2404. That is, they may consider whether a movant's "evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction" for an eligible defendant. *Id.* at 2404–05.

*Concepcion* does not alter our decision in *Jones*, which, unlike *Concepcion*, was concerned with an issue that arises before the

sentencing court's discretion comes into play: determining how much of a drug the defendant possessed. *Jones*, 962 F.3d at 1303. This finding must occur before the district court can define the substantive offense. *Id.* at 1302. In *Jones*, we held that a district court considering a First Step motion is bound by "earlier judge-found facts that triggered statutory penalties that the Fair Sentencing Act later modified." *Id.* at 1303. Those facts include "previous finding[s] of drug quantity." *Id.*

*Concepcion*, by contrast, addressed an issue that arises only after drug quantity and the corresponding statutory penalties have been established: which factors the district court may consider in deciding an appropriate sentence. For instance, had the movant shown evidence of rehabilitation? Such questions are hardly unusual during a sentencing proceeding. The only peculiarity is that the First Step Act permits movants to raise them a second time at a modification proceeding. Put differently, in *Concepcion*, the Supreme Court held that the movant effectively receives a new sentencing determination if he was convicted of a "covered offense" under the First Step Act. During its deliberations, the district court may consider intervening factual and legal developments. It may also decline to modify the movant's sentence and choose to leave the earlier sentence intact. *See Concepcion*, 142 S. Ct. at 2404–05.

*Concepcion* did not hold that First Step Act movants could relitigate their cases from the ground up. In fact, the Court suggested the opposite. It cautioned that "[a] district court cannot . . . recalculate a movant's benchmark Guidelines range in any way

other than to reflect the retroactive application of the Fair Sentencing Act." *Concepcion*, 142 S. Ct. at 2402 n.6; *see also id.* at 2403 n.8. This guidance is fully consistent with *Jones*, in which we held that a movant "cannot rely on *Apprendi* to redefine his offense for purposes of a First Step Act motion." 962 F.3d at 1302. If a movant could use *Apprendi* to redefine his offense, then the district court would have to recalculate his guideline range in violation of the guidance in *Concepcion*. So *Concepcion* reinforces our conclusion in *Jones* that movants may not use a First Step Act proceeding to relitigate a drug-quantity finding.

If we concluded otherwise, we would transform the First Step Act into a more powerful remedy than a motion to vacate. *See* 28 U.S.C. § 2255. Jackson maintains that district courts weighing a motion to reduce a sentence may consider any intervening change of law or fact, regardless of its nexus to sentencing. If that proposition were true, then movants could use the First Step Act to relitigate not only their drug-quantity finding but also any other factual findings—including their guilt. District courts do not traditionally have *that* kind of discretion during initial sentencings or sentencing modification hearings. *Concepcion*, 142 S. Ct. at 2399 ("The discretion federal judges hold at initial sentencings also characterizes sentencing modification hearings.").

"Nothing in the text [of the First Step Act]" implies such discretion or invites district courts to "change other variables" than the modified statutory penalty. *Jackson*, 995 F.3d at 1310 (Pryor, C.J., respecting denial of rehearing en banc). Instead, the factual

findings that support a conviction and statutory penalty may be challenged on direct appeal. Jackson pursued this route decades ago and failed. He also moved to vacate his sentence and lost. The First Step Act does not give him another chance.

## B. Jackson Is Not Entitled to Relief Based on the Timing of His Direct Appeal.

Although the parties disagree about the impact of *Concepcion* on this appeal, they both urge us to remand the case "because of the particular procedural circumstances of . . . Jackson's case." The parties correctly state that Jackson's sentence was pending on direct appeal when the Supreme Court decided *Apprendi*. And they seize on language from *Jones*, where we stated that "in determining what a movant's statutory penalty would be under the Fair Sentencing Act, the district court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing." *Jones*, 962 F.3d at 1303. The parties maintain that because *Apprendi* held that a jury must make a drug-quantity finding and was issued while Jackson's direct appeal was pending, the judge's drug-quantity finding "is not a finding that '*could have been used* to determine [Jackson's] statutory penalty at the time of sentencing.'" (Emphasis added.) We reject the argument that we may now correct an *Apprendi* error that was correctible on direct appeal.

"[N]othing in [the First Step Act] suggests that a district court may revisit a drug-quantity finding for a trafficker's statutory penalty . . . ." *Jackson*, 995 F.3d at 1311 (Pryor, C.J., respecting

denial of rehearing en banc). As *Jones* explained, when the district court considers a motion for reduced sentence under the First Step Act, it may "rely[] on earlier judge-found facts that triggered statutory penalties that the Fair Sentencing Act later modified." 962 F.3d at 1303. Those facts include "a previous drug-quantity finding that was necessary to trigger the statutory penalty if it was made by a judge." *Id.* at 1302. "[T]he district court is bound by [its] previous finding of drug quantity in the same way that it is bound by its previous finding of drug type." *Jackson*, 995 F.3d at 1310 (Pryor, C.J., respecting denial of rehearing en banc) (internal quotation marks and citation omitted).

That Jackson's direct appeal was pending when *Apprendi* was decided does not change this calculus. To be sure, "[a] new rule of criminal procedure applies to cases on *direct* review, even if the defendant's trial has already concluded." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1554 (2021). The parties repeatedly press this point and argue that *Apprendi* must apply here. But Jackson's direct appeal occurred long ago, and a First Step Act motion cannot masquerade as a direct appeal. "[J]ust as a movant may not use *Apprendi* to collaterally attack his sentence, he cannot rely on *Apprendi* to redefine his offense for purposes of a First Step Act motion." *Jones*, 962 F.3d at 1302 (internal citation omitted). Jackson cannot use a motion for a reduced sentence to relitigate an earlier drug-quantity finding.

Jackson had a remedy. After *Apprendi* was decided, he could have challenged his sentence as erroneous before we issued the

mandate for his direct appeal on the ground that the issue of drug quantity was determined by the sentencing judge, not the jury. *See United States v. Cotton*, 535 U.S. 625, 628–29 (2002). Other defendants took this approach. He apparently did not. Although Jackson argued in his motion to vacate, 28 U.S.C. § 2255, that his sentence violated the Sixth Amendment, "*Apprendi* does not apply retroactively [to cases] on collateral review." *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). The First Step Act does not offer Jackson a redo of his direct appeal.

## IV. CONCLUSION

We reinstate our prior decision and **AFFIRM** the order denying Jackson's motion to reduce his sentence.